UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CATHY J. BURTON | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-03176-TWP-MJD |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Cathy Burton ("Burton") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the following reasons, the Court **REMANDS** the decision of the Commissioner for further consideration.

### I. BACKGROUND

**A.  Procedural History**

Burton filed the operative application for DIB on January 24, 2014, alleging a disability onset of February 11, 2011. (Filing No. 8-2 at 16.) Burton previously filed a Title II application on June 24, 2013, alleging the same onset date, but she did not appeal the Social Security Administration's initial denial. The appeal at issue in this case relates to Burton's current claim for the period beginning September 19, 2013 through May 29, 3015. (Filing No. 8-2 at 16.)

Her claims were initially denied on April 23, 2014 and again upon reconsideration on July 9, 2014. *Id.* Burton filed a timely request for a hearing, which was held on August 14, 2014, before Administrative Law Judge Joseph Brinkley (the "ALJ"). (Filing No. 8-2 at 25.) The ALJ

issued a decision on May 29, 2015, denying Burton's application. *Id.* On June 26, 2015, Burton requested review by the Appeals Council. ([Filing No. 8-2 at 8](#).) The Appeals Council denied her request for review on September 19, 2016, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. ([Filing No. 8-2 at 2](#).)

**B.      Factual Background**

At the time the of her February 2011 disability onset date, Burton was 50 years old, and on September 19, 2013, the day after the date of the prior determination she was 52 years old. ([Filing No. 8-2 at 36](#).) Burton completed the ninth grade, however, she later acquired a GED. *Id.* She lives at home with her boyfriend. She worked in a warehouse for twenty-five years and the Vocational Expert identified her past work as an order filler. ([Filing No. 8-2 at 23](#).) Burton testified that she has constant pain in the bottom of her back which prevents her from working.

Burton alleges the following impairments: arthritis and plantar fasciitis with foot problems; compression fractures in spine; thyroid problems; prone to falling and losing balance; edema; osteoarthritis of bilateral knees; mild degenerative disc disease of cervical spine; and back pain. The ALJ also considered obesity at each step of the sequential evaluation process even though obesity is no longer a listed impairment.

In August 2009, Burton underwent foot surgery to address her plantar fasciitis and heel spurs. ([Filing No. 8-2 at 21](#).) Treatment notes reflect ongoing reports of foot pain following the surgery. *Id*. By December 2009, Burton reported that although pain was present, it had improved greatly. On June 14, 2013, she sought treatment from her primary care physician, Sridevi Damera, M.D., for pain in both of her knees. ([Filing No. 8-2 at 5](#).) She reported that the pain in her knees was getting worse. Burton stated that the pain was constant and hurts more with walking or going

2

up the stairs. (Filing No. 8-9 at 69.) X-rays were ordered and showed mild degenerative changes, most prominent at the patellofemoral compartments. *Id.* at 76.

On January 16, 2014, Burton presented to the emergency room with complaints of back pain after sustaining a fall. (Filing No. 8-8 at 6.) She stated that she has balance issues and falls occasionally at home since her bilateral foot surgery in 2009. *Id.* at 10. X-rays showed an age indeterminate mild anterior fracture with intervertebral disc narrowing at T11/T12 and acute anterior compression fractures at L1 and L4. *Id.* She was given a brace to wear for six weeks and told to follow up with neurosurgery. In addition to the brace, Burton was given a cane for ambulation and a prescription for Percocet for the pain.

In March 2014, Ami Rice, M.D. ("Dr. Rice") saw Burton for a consultative physical examination. Burton reported a long history of knee pain and foot pain for which she wears braces and shoe inserts daily. (Filing No. 8-8 at 34.) She reported that she was unable to follow up with neurosurgery after her fall due to loss of insurance. Burton informed Dr. Rice that she could lift three pounds, could stand for a few minutes, could not walk without assistance, could climb nine stairs, could perform household chores with difficulty and in short intervals. *Id.* Dr. Rice noted that Burton had normal posture, but an antalgic gait. Dr. Rice stated that clinical evidence supported the need for ambulatory aid for episodes of dizziness. *Id.* at 35. Dr. Rice also noted that Burton removed her back brace for the physical examination and exhibited no difficulty with standing on her heels and toes, or walking in tandem heel-to-toe periodically touching the table for support and Burton could get on and off the examination table without assistance.

X-rays taken in April 2014 at the request of the State Agency, revealed chronic compression fractures and deformities at T11, L1, and L4 as well as mild lower lumbar facet arthritis. (Filing No. 8-8 at 39.) It also noted that there were no abnormalities or significant

3

degenerative changes regarding Burton's feet. In April 2014, State Agency reviewing physician Anne Morris, M.D., ("Dr. Morris") opined that Burton could perform light work, but could never climb ropes, ladders, or scaffolds, and could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl only occasionally. ([Filing No. 8-3 at 83](Filing No. 8-3 at 83).) In July 2014, State Agency reviewing physician M. Ruiz, M.D. affirmed Dr. Morris' opinion. *Id.* at 93-94.

In July 2014, Burton established care with Jason Sorg, M.D. ("Dr. Sorg"). Burton reported to Dr. Sorg that she walked with a cane and had very poor balance which she attributed to past foot surgeries. ([Filing No. 8-8 at 44](Filing No. 8-8 at 44).) She stated that her back and legs felt weak "like they would give out on her." *Id.* Dr. Sorg diagnosed Burton with diffuse thoracolumbar pain with bilateral lower limb pain and sciatica, lumbosacral spondylosis with degenerative disc disease, multilevel compression deformities in the thoracic and lumbar spine, and gait dysfunction/poor balance with diffuse hyperreflexia. *Id.* at 48. MRIs revealed mild degenerative changes; chronic superior endplate compression deformities at L1 and L4, and mild edema. *Id.* at 64. Dr. Sorg referred Burton to physical therapy and bursae injections to relieve pain. *Id.* However, Burton stated that she was not interested in injections. Dr. Sorg also referred Burton to a neurologist for her hyper-reflexia and gait dysfunction.

In September 2014, Rheumatologist Inna Aroutiounova, M.D. ("Dr. Aroutiounova"), evaluated Burton's low back pain, bilateral knees with stiffness, and tingling. Dr. Aroutiounova noted normal findings throughout the spine and joints, normal range of motion, and no pain or tenderness. ([Filing No. 8-8 at 72.](Filing No. 8-8 at 72.)) Dr. Aroutiounova also noted that Burton's gait was normal and she used no devices. *Id.* Dr. Aroutiounova administered injections in the lumbar and right hip regions. *Id.* at 77.

On October 15, 2014, Dr. Sorg evaluated Burton for a follow up of her diffuse thoracolumbar back pain with bilateral lower limb radicular pain. ([Filing No. 8-9 at 2](#).) Burton stated that neither physical therapy nor the pain injections had helped relieve her pain. *Id.* Dr. Sorg wrote that Burton had diffuse thoracolumbar pain with bilateral lower limb pain/sciatica; lumbosacral spondylosis with degenerative disc disease; multilevel compression deformities seen on prior x-rays healed with no new fractures; lateral hip pain consistent with trochanteric bursitis; gait dysfunction/poor balance with diffuse hyper-reflexia. ([Filing No. 8-9 at 6](#).) Dr. Sorg recommended discontinuing physical therapy as Burton's lower back pain and hip pain had not responded to physical therapy. *Id.*

On October 28, 2014, Dr. Aroutiounova examined Burton and again noted that Burton demonstrated normal gait without the use of an assistive device at that appointment. (Filing No. 8-8 at 72).

Burton resumed physical therapy in January 2015. Physical Therapist Jenna Gabet ("Gabet") noted that Burton's examination and findings included: increased pain affecting function; decreased strength affecting ability to perform functional tasks; decreased balance affecting fall risk; decreased endurance affecting participation in the community; and decreased perceived level of function. ([Filing No. 8-9 at 50](#).) Gabet also noted a prognosis of "good" and that Burton had the potential for improvement and she expected Burton to attain improvement with Physical Therapy. *Id*. Burton completed ten visits and her final physical therapy appointment was February 17, 2015. *Id*. Gabet noted that Burton made slow progress throughout course of physical therapy and that she had reached a plateau in status. Gabet discharged Burton her from physical therapy with a home program for continued progress and follow-up with her physician as needed. *Id.* at 61.

## C. The ALJ's Decision

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Burton was not disabled. (Filing No. 8-2 at 25.) At step one of the analysis, the ALJ found that Burton met the insured status requirements of the Act through December 31, 2016, and had not engaged in substantial gainful activity since September 19, 2013. *Id.* at 64. At step two, the ALJ found that Burton had the following severe impairments: status post plantar fasciotomy; heel spur resection; total onychoplasty of the first right toe on the right foot; trochanteric bursitis; osteoarthritis of the bilateral knees; mild degenerative disc disease of the cervical spine; diffuse thoracolumbar pain with bilateral lower limb pain and sciatica; lumbosacral spondylosis with degenerative disc disease; healed multilevel compression fractures in the thoracic and lumbar spine; and obesity. *Id.* at 18. The ALJ found Burton's hypothyroidism not severe because Burton testified that the medication controls it. At step three, the ALJ found that Burton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 19. The ALJ considered Listing 1.02 *Major dysfunction of joints* ("Listing 1.02") and Listing 1.04 *Disorders of the Spine* ("Listing 1.04"). The ALJ stated that the noted physical impairments do not cause an inability to ambulate effectively as defined in Section 1.00B2b. The ALJ concluded that Burton had the residual functional capacity ("RFC") to perform light work except that she can only occasionally use her upper extremities and lower extremities; can occasionally climb ramps and stairs, balance, kneel, and stoop; can never crawl, crouch, or climb ladders, ropes, or scaffolds. *Id.* The ALJ also found that Burton needs to use a cane while walking but can use her other hand to lift and carry. At step four, the ALJ determined that Burton is unable to perform any of her past relevant work. At step

five, the ALJ found that considering Burton's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, thus she is not disabled from her alleged onset date through the date of the ALJ's decision. *Id.* at 25.

## II. STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her RFC will be assessed and used for the fourth and fifth steps. RFC is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the court reviews the ALJ's decision deferentially, the court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because

of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. DISCUSSION

Burton argues that two issues constitute reversible error. (Filing No. 10 at 4.) First, the ALJ's credibility analysis against her is filled with error and contrary to SSR 96-7p. *Id.* at 16. Second, the ALJ failed to provide an explanation regarding his finding that Burton's impairments do not meet or equal Listings 1.02 or 1.04 and there was no medical expert at the hearing to interpret and provide guidance. *Id.* at 4 and 22. The Court will address each issue in turn.

#### A. Credibility Analysis

The factors that the ALJ must consider when assessing the credibility of a claimant's statements include the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate the symptoms; any measures other than treatment the claimant uses or has used to relieve symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to symptoms. SSR 96-7p; 20 C.F.R. § 404.1529(c)(3). Because credibility is largely a factual determination, and because the ALJ is able to perceive witness testimony firsthand, the court will not upset credibility determinations so long as there is some support in the record and the ALJ is not "patently wrong."

9

*Herron,* 19 F.3d at 335; *see Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) (credibility findings are afforded "considerable deference" and can only be overturned if they are unreasonable or unsupported). "When assessing an ALJ's credibility determination, [the court does not] undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [the court] merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue,* 529 F.3d 408, 413. "Though an ALJ's credibility determination may only be overturned if it is 'patently wrong,' a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin,* 775 F.3d 929, 937 (7th Cir. 2015) (citations omitted).

The ALJ found Burton's testimony concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible due to the objective medical evidence. ([Filing No. 8-2 at 21](#).) Burton testified that she could stand for 20 minutes and walk for 15 to 20 minutes before her back pain started to bother her. *Id.* at 20. She also stated she could not sit for long stretches of time before she needed to stand. During a typical day, Burton watches television while sitting in a chair, and drives about once a week for 10 minutes to visit her mother. She also testified that her condition had improved in the previous three months, but prior to that time she needed assistance to bathe and use the toilet. *Id.*

Burton argues that the ALJ's determination that she was "not entirely credible" amounted to meaningless boilerplate language because it failed to evaluate her subjective symptoms in accordance with SSR 96-7p. ([Filing No. 10 at 18](#).) SSR 96-7p requires the ALJ to evaluate the claimant's symptoms or degree of limitations, *e.g.,* intensity, persistence, or limiting effects that are consistent with the medical evidence or the ALJ's own observations. The Commissioner responds that the ALJ's use of boilerplate language was not reversible error because the ALJ

provided and explained additional reasons for his credibility findings. ([Filing No. 11 at 17](#).) For example the ALJ referred to Burton's longitudinal medical history, her one week evaluation after fracturing her spine, and her statements that she could climb nine stairs, lift three pounds with either arm, and do housework with difficulty in short intervals. *Id.*

"Where the Commissioner's decision lacks evidentiary support or is so poorly articulated to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). The ALJ's evaluation of a claimant's subjective symptoms must contain 'specific reasons' for a credibility finding. *Id.* at 942. The ALJ's credibility determination was patently wrong as it included boilerplate language which has often been criticized by the Seventh Circuit as failing to build a logical bridge between the ALJ's conclusory credibility statement and objective evidence in the record. *Murphy v. Colvin,* 759 F.3d 811, 816 (7th Cir. 2014).

With regards to Burton's activities of daily living, the ALJ never alleged that her limited daily activities are contrary to her alleged disability. However, the ALJ did use boilerplate language when describing his credibility determination on the objective medical evidence. For example, the ALJ stated: "The claimant's longitudinal medical history, based on the medical evidence, does not support her allegations of disabling symptoms and limitations." ([Filing No. 8-2 at 21](#).) The record shows that much of the medical evidence, with the exception of Dr. Aroutiounova's evaluation, during the relevant time period was consistent with Burton's allegations of disabling symptoms and limitations. In particular, her treating physicians found she had an unsteady and antalgic gait; x-rays revealed mild degenerative changes in her knees and fractures of her spine; a cane was found necessary for ambulation; and she presented a fall risk as evidenced by the serious fall she sustained in January 2014. After ten sessions of physical therapy did not help improve her condition, Dr. Sorg recommended that Burton discontinue physical

therapy, albeit with instructions for home exercises and the expectation that "it may possibly at some point provide her some degree of relief." ([Filing No. 8-9 at 41](#).) The medical evidence reveals that Dr. Aroutiounova was the only physician to opine normal findings throughout the spine and joints including a normal gait and that Burton used no devices. Other than the ALJ's citing that his credibility determination rested on the fact that the medical evidence did not support Burton's subjective allegations, the Court cannot determine the specific reasons the ALJ had for making an adverse credibility determination. The ALJ failed to build a logical bridge between his credibility determination that Burton was "not entirely credible" and any inconsistencies regarding Burton's alleged subjective limitations weighed against the medical evidence in the record. This case must be remanded for further proceedings because the ALJ did not adequately explain his credibility determination with specific reasons and the court is unable to determine if it was supported by substantial evidence in the record.

**B.** **Listings 1.02 and 1.04 Analysis**

The Court finds no error in the Listings 1.02 and 1.04 analysis. The ALJ considered Burton's history of foot, hip, and knee problems under Listing 1.02, and considered her back issues under Listing 1.04. ([Filing No. 8-2 at 19](#).) The ALJ noted the medical evidence does not show that Burton's many physical impairments caused an inability to ambulate effectively as defined in Section 1.00B2b. *Id.* Burton argues that a medical expert should have been present at the hearing to provide an opinion as to the possibility of equaling the Listings as required by SSR 96-6p. She further argues that the ALJ's analysis was inadequate because he failed to consider the other ways that ineffective ambulation could be met. *Id.* at 25. The Commissioner notes that the ALJ was not required to obtain additional medical expert testimony in this case; and he was entitled to rely on State Agency reviewing physicians' conclusions that Burton's impairments did not equal a listing

and Burton failed to meet her burden of showing ineffective ambulation in light of inconsistent medical information. ([Filing No. 11 at 14-15](#).)

The Seventh Circuit has previously considered what the regulations require an ALJ to consider when a claimant has alleged "ineffective ambulation."

> But the regulations further provide a nonexhaustive list of examples of ineffective ambulation, such as the inability to walk without the use of a walker or two crutches or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to carry out routine ambulatory activities, like shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single handrail.

*Moss v. Astrue,* 555 F.3d 556, 562 (7th Cir. 2009). In *Moss*, the Seventh Circuit remanded a case where the ALJ found the claimant failed to prove an inability to effectively ambulate due to the fact that she used only *one* cane because the ALJ failed to adequately consider other limitations that show an inability to ambulate. *Id.* at 562-63. The facts here are distinguished from *Moss*, because Burton has not shown that the "ALJ's determinations regarding the medical evidence and [Plaintiff's] credibility [were] not supported by substantial evidence." *Moss*, 555 F.3d at 562-63. When making his determinations, the ALJ discussed Dr. Sorg's finding of gait dysfunction, Burton's statements and the medical evidence and opinions of the reviewing physicians.

Unfortunately, Burton failed to meet her burden of showing ineffective ambulation. *See Rice*, 384 F.3d at 369. She points to observations by physicians that she has poor balance, fell once in 2014, used one cane and had an antalgic or not entirely normal gait. In addition, she argues the ALJ failed to consider her reports of an inability to walk a block at a reasonable pace on rough surfaces, and inability to carry out routine activities like shopping and banking.

However Listing 1.00B2b specifies that ineffective ambulation requires more and none of Burton's examples establish *severe* limitation. The ALJ was not obligated substitute Burtons allegations of ineffective ambulation and statements made to her doctors, over the objective

13

medical evidence when determining the severity of impairments at step three. See *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("Although a claimant can establish the severity of his symptoms by his own testimony, his subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."). The ALJ's step three determinations were supported by the opinion of two state agency reviewing physicians. In addition, the ALJ considered the observations that on two occasions, Dr. Aroutiounova observed that Burton had a normal gait without an assistive device, even after she began using her cane and considered Burton's statement that she could climb nine steps and perform household chores with difficulty in short intervals. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). The ALJ not only considered objective examination findings, x-rays and MRI's, but he also considered Burton's statements to her doctors and physical therapist and her statements regarding daily activities. Accordingly, the Court determines the ALJ's step three determination was adequate.

Finally, Burton asserts the ALJ was required to obtain an updated medical opinion from a medical expert pursuant to SSR 96-6p, because additional evidence was received that could modify the State Agency medical consultant's finding that her impairment is not equivalent in severity to any impairment in the Listing of Impairments.

The State Agency physicians, Drs. Morris and Ruiz, examined Burton in April and July 2014, respectively, and concluded that Burton's impairments did not meet or equal a listed section. Burton established care with Dr. Sorg in July 2014. She explains that Dr. Sorg noted, and MRIs confirmed, degenerative changes and gait dysfunctions among other medical problems. Dr. Aroutiounova evaluated Burton in September 2014 and October 2014, and her assessment was not

inconsistent, with the exception that on the dates of examinations with Dr. Aroutiounova, Burton did not use an assistive device. Burton was released from physical therapy on February 17, 2015, after showing slow progress throughout physical therapy. Burton argues that Dr. Sorg's assessment, the MRIs and her release from physical therapy qualified as additional, contradicting evidence obtained after the State Agency's medical consultants' findings which required updated medical opinions.

Burton argues that her ambulatory ability is particularly important in this case "because if the ALJ had found Burton capable of even sedentary work, the GRID rules would require a finding that she is disabled based on her age and past work experience." ([Filing No. 10 at 26](Filing No. 10 at 26).) In an RFC assessment, the adjudicator must explain how any material inconsistencies in the evidence in the case records were considered and resolved. SSR 96-8p at *7 (S.S.A. July 2, 1996). Burton argues the ALJ was required to obtain updated medical opinions in light of the additional, contradicting evidence received after the State Agency medical consultants' findings, to adequately resolve any inconsistencies.

The Court is not persuaded. As the Commissioner argues, none of Burton's examining or treating physicians contradicted the determinations from Drs. Morris and Ruiz that her impairments did not meet or medically equal a listed sections. The ALJ was entitled to rely on the opinion from the state agency reviewing physicians, Drs. Morris and Ruiz, who found that Plaintiff's impairments did not meet or medically equal any listed section. *See* 20 C.F.R. § 404.1526(e) (opinions from medical or psychological consultants designated by the Commissioner are used to determine medical equivalence); *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (The "Disability Determination and Transmittal forms . . . conclusively establish that consideration by a physician designated by the Commissioner has been given to the question of medical

equivalence at the initial and reconsideration levels of administrative review.") (citations and internal quotation omitted); *Filus*, 694 F.3d at 867 ("Because no other physician contradicted these two [state-agency reviewing-physician] opinions [on equivalency], the ALJ did not err"). Remand is not necessary on this basis.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 1/8/2018

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana


DISTRIBUTION:

Charles D. Hankey
charleshankey@hankleylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov